[No. 5206–7–II. Division Two. June 29, 1982.]

KAISER ALUMINUM & CHEMICAL CORPORATION, *Appellant,*
v. THE DEPARTMENT OF ECOLOGY, *Respondent.*

*Joanne Henry,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Jeffrey D. Goltz, Assistant,* for respondent.

REED, C.J.— Kaiser Aluminum & Chemical Corporation (Kaiser) appeals from a superior court judgment which upheld an order by the Pollution Control Hearings Board (Board) affirming the Department of Ecology's (DOE) denial of tax credits for the modification of certain pollution control equipment. It is undisputed that Kaiser's assignments of error relate solely to the Board's conclusions of law. Accordingly, we have placed ourselves in the same position as the superior court and reviewed the record developed before the Board pursuant to the "error of law" standard of the administrative procedure act. RCW 34.04-.130(6)(d); *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 645 P.2d 113 (1982). On the basis of this review we hold that the Board did not commit an error of law in its determination that the modification was ineligible for tax credits and affirm the decision of the Superior Court.

In the early 1970's DOE promulgated pollution standards for the aluminum industry and issued a regulatory order and compliance schedule for the control of emissions from Kaiser's plant in Tacoma. This order required the installation by January 1, 1975, of "scrubbing" devices to control the emission of fluorides and particulate matter into the atmosphere. In December 1969, apparently in anticipation of the forthcoming regulations, Kaiser resolved to install a "wet scrubbing" system in its Tacoma plant and filed an application for tax credit under RCW 82.34, the statute governing tax exemptions and credits for pollution control facilities. This application was promptly approved. Kaiser subsequently elected to comply with DOE's regulatory

order by installing a "dry scrubber" and a modified application for tax credits was submitted in January 1973. This application was likewise approved, and installation was completed in late 1974.

After installation of the dry scrubber, Kaiser's emissions to the outdoor atmosphere decreased dramatically. However, because of the nature of the dry scrubbing system, there were increased emissions into the interior of the plant (*i.e.*, the potrooms). Although some of these emissions to the potrooms eventually escaped through the roof vents into the outdoor air, the plant's overall particulate emission levels were within the limits set by DOE's regulatory order. (The maximum level of 15 pounds of particulate per ton of aluminum produced has been exceeded on only four or five occasions since the installation of the scrubber).

To control these increased interior emissions Kaiser decided to modify its dry scrubbing system by installing a calciner or "roaster." The evidence suggests that a primary motivation for this decision may have been complaints by Kaiser employees and the Department of Labor and Industries regarding the air quality in the potrooms. However, laboratory tests indicated that the calciner would also reduce the total particulate emissions to the outside atmosphere by way of the roof vents.

Technological development of the calciner was completed in 1978. In September of that year Kaiser submitted an application for tax credit certification relating to this device as an addendum to its previous application for the dry scrubber. DOE denied the application on the grounds that the calciner was not necessary to meet the requirements of the regulatory order or compliance schedule governing particulate emissions from the plant.

Kaiser appealed to the Board. After a lengthy hearing the Board affirmed the denial of tax credit certification on the grounds that (1) the calciner was not being installed in response to a specific requirement of DOE; (2) the calciner was not an air pollution control facility; and (3) the application seeking tax credit approval of the calciner was

untimely. The Board's conclusions were subsequently affirmed by the Superior Court.

On appeal to this court Kaiser assigns error to each of the Board's conclusions. In our view, the dispositive issue concerns the applicability of RCW 82.34.010(5) to Kaiser's application for tax credits. This statute clearly indicates that an application for tax credit certification of a pollution control facility will be granted only if the facility is being installed in response to a specific requirement or regulatory order of the appropriate control agency.[1] If applicable, this statute would preclude certification of the calciner even if Kaiser were to prevail on the remaining assignments of error.

With respect to this issue, Kaiser contends that RCW 82.34.010(5) governs only applications for the certification of an *original* facility. Kaiser maintains that because the calciner is a modification to a previously certified facility (*i.e.,* the dry scrubber), the controlling statute is RCW 82.34.080, which provides:

> If subsequent to the issuance of a certificate or supplement for a facility, *a determination is made* to modify or replace such facility, the holder thereof may file an application for a new certificate or supplement covering such modified or replacement facility in accordance with the procedures set forth in this chapter for original certificates and supplements thereto. After the issuance by the department of any new certificate or supplement, all subsequent tax exemptions and credits for the modified or replacement facility shall be based thereon.

(Italics ours.) According to Kaiser, this statute takes applications for modification or replacement of an existing facil-

---

[1] RCW 82.34.010(5) provides in pertinent part:

"'Certificate' shall mean a pollution control tax exemption and credit certificate for which application has been made not later than December 31, 1969: *Provided,* That with respect solely to a facility required to be installed in an industrial, manufacturing, waste disposal, utility, or other commercial establishment which is in operation or under construction as of July 30, 1967, such application will be deemed timely made if made within one year after the effective date of specific requirements for such facility promulgated by the appropriate control agency."

ity outside the operation of RCW 82.34.010(5) and eliminates the legal necessity of a specific agency requirement.

In support of this argument Kaiser points out that former WAC 173–24–090[2] set forth three disjunctive tests to determine whether a facility was installed primarily for the purpose of pollution control. The first two tests related to either a specific requirement or the necessity of the facility to meet generally applicable pollution control standards. WAC 173–24–090(1), (2). The third test, however, allowed approval of a facility which was installed to achieve the best known, available and reasonable means of

---

[2]At the time of DOE's denial of Kaiser's application for tax credits, WAC 173–24–090 provided:

Installation for the purpose of pollution control. A facility will be considered to be installed or intended to be installed for the primary purpose of pollution control when:

(1) It was installed or intended to be installed in response to a requirement of the department or a regional or local air pollution control authority contained in a permit, order or regulation which applies to the particular industry or commercial establishment in question, and such facility meets the requirements of such permit, order, or regulation, or,

(2) It was installed or intended to be installed to meet the requirements of generally applicable air or water pollution control standards or regulations promulgated by federal, state, or regional agencies, and does in fact meet or exceed all such applicable standards, or,

(3) It was installed or intended to be installed to achieve the best known, available, and reasonable means of preventing and controlling air and water pollution and meets or exceeds all federal, state, and regional requirements applicable to the facility in question.

The regulation has subsequently been amended to provide that a facility is installed for the primary purpose of pollution control only if it is installed in response to an order or regulation issued by DOE or a local air authority. WAC 173–24–090 (1980 amendment). This amendment deletes the language of former WAC 173–24–090(3), which indicated that any facility designed to achieve the best known means of fighting pollution satisfied the requirement that it be installed for the primary purpose of pollution control. Despite Kaiser's protestations to the contrary, we do not feel that this amendment reflects a material change in the intent or effect of the regulation. Rather, we believe that the amendment is merely a clarification of DOE's position that former WAC 173–24–090(3) applied only to facilities for which an application for tax credit certification was made prior to December 31, 1969. Because this clarification occurred in the midst of a controversy surrounding the meaning of the regulation, it should be considered indicative of DOE's original intent. *Cf. Kaiser Cement & Gypsum Corp. v. State Tax Comm'n*, 250 Or. 374, 443 P.2d 233 (1968).

pollution control and met or exceeded all applicable standards. WAC 173–24–090(3). Kaiser maintains that this third test was consistent with its present argument that RCW 82.34.010(5) and 82.34.080 were designed to operate independently of one another to allow certification of a modification or replacement of an existing facility despite the absence of a specific requirement.

We believe that Kaiser's reliance on former WAC 173–24–090(3) is misplaced. DOE's arguments before the Board indicate that in denying certification to the calciner it concluded that this regulation merely implemented the statutory requirement that a facility be installed for the purpose of pollution control (*i.e.,* RCW 82.34.030) and did not affect the separate statutory requirement that a facility be installed pursuant to a specific order of the appropriate control agency. This interpretation, by the agency which promulgated the regulation initially and concurred in by the Board, is entitled to great weight. *State Liquor Control Bd. v. State Personnel Bd.,* 88 Wn.2d 368, 561 P.2d 195 (1977); *Toulou v. Department of Social & Health Servs.,* 27 Wn. App. 137, 616 P.2d 678 (1980). Moreover, rules and regulations promulgated by an agency cannot amend or change legislative enactments. *State ex rel. Public Disclosure Comm'n v. Rains,* 87 Wn.2d 626, 555 P.2d 1368, 94 A.L.R.3d 933 (1976). Therefore, our determination of whether RCW 82.34.010(5) and 82.34.080 are mutually exclusive, as alleged by Kaiser, is necessarily governed by the statutes themselves.

In making this determination, we are guided by certain well settled legal principals. We first note that the various tax exemption provisions set forth in RCW 82.34 must be strictly construed against the party seeking exemption. *International Paper Co. v. Department of Rev.,* 92 Wn.2d 277, 595 P.2d 1310 (1979). We also note that great weight is generally accorded to the interpretation of a statute by the administrative agency which is charged with its administration. This is particularly true when a so–called "special law" field is concerned. *Overton v. Economic*

*Assistance Auth.,* 96 Wn.2d 552, 637 P.2d 652 (1981); *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 545 P.2d 5 (1976). Finally, we recognize that our primary consideration in construing these provisions is to effectuate the legislative intent underlying their enactment. *In re Lehman,* 93 Wn.2d 25, 604 P.2d 948 (1980); *Janovich v. Herron,* 91 Wn.2d 767, 592 P.2d 1096 (1979).

■ There is no judicial authority or legislative history delineating the policy underlying the various provisions of RCW 82.34. However, we are convinced that these provisions were not enacted for the primary purpose of eliminating pollution. States need not provide industries with tax breaks as an incentive to control pollution. Control agencies have absolute authority to require the elimination of pollution by alternatives which are much speedier than the construction of pollution control facilities (*i.e.,* alterations in the manufacturing process or plant closures). Rather, we are convinced that the underlying purpose of the legislation was merely to enable older industrial plants, which were not constructed with pollution control requirements in mind, and had not theretofore been regulated, to comply with such requirements without going bankrupt and adversely affecting the State's economy. In other words, the legislation was designed to place older industrial establishments on an equal footing with newer plants that were able to anticipate the forthcoming pollution control standards and plan accordingly. This interpretation is consistent with the fact that plants constructed after 1969 are specifically excluded from eligibility for tax benefits. *See* RCW 82.34-.010(5). Further support for this limited interpretation is derived from the Legislature's recent elimination of the tax credit provisions in their entirety now that these older plants have had an adequate opportunity to take advantage of the legislation in complying with applicable pollution standards. Laws of 1981, 2d Ex. Sess., ch. 9.

■ When viewed in light of the limited purpose underlying the legislative enactment as a whole, it is clear that RCW 82.34.080 was not intended to operate independently

of RCW 82.34.010(5) so as to eliminate the legal necessity of a specific requirement with respect to modifications or replacements of previously certified facilities. Such a construction of the statutes would entitle older plants (pre–1967) to a perpetual stream of tax credits for all modifications to (or replacements of) existing facilities which have any beneficial impact on air quality. However, newer plants (post–1969) would remain totally ineligible for any tax benefits, *see* RCW 82.34.010(5). In our view this interpretation would be inconsistent with the Legislature's desire, as we discern it, to place all industrial plants on an equal footing in complying with pollution control regulations. Accordingly, we hold that the two statutes operate in conjunction with one another to allow tax credit certification only where the modification or replacement of an existing facility is mandated by a specific requirement of the appropriate control agency. This interpretation of the statutes is entirely consistent with both the construction placed upon them by the agencies charged with their administration (*i.e.,* DOE and Board), and the general rule that tax exemptions are to be narrowly construed in favor of the application of the tax. *See Overton v. Economic Assistance Auth., supra; International Paper Co. v. Department of Rev., supra.*

For the stated reasons, we affirm.

PETRIE and PETRICH, JJ., concur.

Reconsideration denied July 23, 1982.