[No. 9973-6-I.   Division One.   May 25, 1983.]

JAMES ANDERSON, *Appellant,* v. THE DEPARTMENT OF ECOLOGY, *Respondent.*

Kent B. Haberly, for appellant.

Kenneth O. Eikenberry, Attorney General, and Jeffrey D. Goltz, Assistant, for respondent.

ANDERSEN, C.J.—

FACTS OF CASE

A property owner, James Anderson, appeals from a judgment affirming a decision by the Pollution Control Hearings Board (Board) which upheld an order issued by the Washington State Department of Ecology (Department) requiring him to remove mobile homes and fill from his property located within the Skagit River flood zone.

The property owner's property on which he operates the Rivershore Mobile Home Park is located in Mount Vernon, Washington between dikes within the floodway of the Skagit River. In 1975, he filled a portion of his property, and the Department of Ecology allowed the fill for a road.

When he brought in additional fill and placed mobile homes on the property without a permit, the Department issued an order requiring him to remove all mobile homes and fill from the property. The property owner appealed the order and a hearing was held before the Board. The Board affirmed the Department and concluded:

V

[The property owner's] filling of portions of the site since 1975, are "works" within the meaning of WAC 508–60–010. As a "work" a permit was required before construction. WAC 506–60–040. The fill must not adversely influence the regimen of the Skagit River during a 100 year frequency flood. Without such a determination, the fill should be removed.

VI

[The property owner's] earlier experience with flooding of his site and damage to mobile homes on it makes it evident that the mobile homes were not readily remov-

able at that time. Although some trailers were movable, most were attached or affixed to the realty even though in a temporary fashion as compared to permanent building. Based upon the development observed at the time of the issuance of the instant order, [the property owner] was maintaining "structures" or "works" within the meaning of WAC 508–60–010 and the statute. A permit is required to maintain or operate such a development in the floodway and a permit should be secured or the development removed.

The mobile homes have been shown to have suffered appreciable damage from flood waters. In the past five years, at least one mobile home has been dislodged by flood water causing damage to property. These events have occurred in floods of magnitudes much smaller than a 100 year flood. Further evidence shows that the regimen of the Skagit River would be adversely influenced from the structures and works on the site during a 100 year flood. Finally, and most importantly, the mobile homes are designed for human habitation of permanent nature. The latter consideration appears to foreclose maintenance of the mobile homes on the site on a year–round basis. However, this does not foreclose the possibility that [the Department of Ecology] may issue a permit for those months of the year when flood dangers are not present.

## VII

[The property owner's] attempt to remove the mobile homes on the site from the definition of "works" or "structures" by creating new house rules relating to removal of the mobile homes does not affect the order earlier issued by [the Department of Ecology]. Even if [the property owner] could leave the wheels and tongues on the mobile homes, the mobile homes would not necessarily be readily removable.

The property owner petitioned for review to the Superior Court. It affirmed the Department's order and stated in a memorandum decision:

The Board's determination that the mobile homes are designed for human habitation of a permanent nature, that the fill and trailers had a high damage potential and that the fill and trailers are "structures" and "works" is supported by the evidence and law and must be affirmed.

## ISSUE

Did the Board commit an "error of law" when it concluded that under the facts of this case the mobile homes were structures as defined in WAC 508–60–010(7) and therefore subject to regulation?

## DECISION

CONCLUSION. No. The determination by the Board that the mobile homes were "structures" as defined by the Department was not erroneous when considering the broad public purposes of the statute creating flood control zones, the WAC regulation defining the term "structure", and its application to the facts of this case.

■ The property owner does not challenge the findings of fact made by the Pollution Control Hearings Board; accordingly, the Board's findings will be considered as verities on appeal and we need not determine whether or not the agency's findings are clearly erroneous. Thus the standard of review is whether the Board's conclusion that the mobile homes were "structures" was an "error of law" in view of the undisputed facts. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 646 P.2d 113 (1982); *Kaiser Aluminum & Chem. Corp. v. Department of Ecology*, 32 Wn. App. 399, 647 P.2d 551 (1982).

The Department in issuing its order requiring the property owner to remove the fill and mobile homes from his property relied on RCW 86.16.080 which in its pertinent part provides:

No person . . . shall have the authority or the right hereafter to construct, reconstruct, or modify any structure or works affecting flood waters within any flood control zone, established under the provisions of this chapter, or to operate or maintain any such structure or work hereafter constructed, reconstructed or modified without a written permit . . . applied for and issued in accordance with such general rules and regulations as shall be established and promulgated for the purpose under the provisions of this chapter . . .

The foregoing statute is part of the statutory scheme

which created flood zones. That, in turn, was part of a legislative effort to alleviate damages caused by floods to public and private property, protect the public health, safety and continued development of the state's natural resources against recurrent flood depredations. RCW 86.16.010; *Maple Leaf Investors, Inc. v. Department of Ecology,* 88 Wn.2d 726, 565 P.2d 1162 (1977). The provisions of RCW 86.16 are to be liberally construed to effectuate its purposes, RCW 86.16.900, and the Department is empowered to establish and promulgate rules and regulations governing the administration of the chapter, RCW 86.16.027.

In so effectuating the purposes of the statute, the term "structure" was defined by a rule promulgated by the Department as:

> any building, house, apartment, factory or other structure attached to or affixed upon the realty;

WAC 508-60-010(7). The Department also defined the term "works" as:

> any dam, wall, wharf, embankment, levee, dike, pile, bridge, improved road, abutments, projection, excavation, channel rectification, conduit, culvert, wire, fence, rock, gravel, refuse, fill or other similar development attached to or affixed upon the realty;

WAC 508-60-010(8).

The Department also required by WAC 508-60-040 that applications for permits for works or structures on state floodways must comply with these requirements:

> (1) The structures or works are designed so as not to be appreciably damaged by flood waters.
> (2) The structures or works shall be firmly anchored or affixed to the realty in order to prevent dislocation by flood water and damage to life, health, and property.
> (3) The structures or works will not adversely influence the regimen of any body of water by restricting, altering, hindering, or increasing flow of the flood waters in the floodway or flood channel expected during a flood up to a magnitude of a one hundred year frequency. . . .
> (4) The structures or works are not designed for, or will not be used for either (a) uses associated with high

flood damage potential or (b) dwellings for human habitation of a permanent nature; . . .

■ Generally, "in an accepted sense, a trailer house is a structure." *Sioux Falls v. Cleveland,* 75 S.D. 548, 552, 70 N.W.2d 62, 64 (1955). "A trailer placed on land for use as a dwelling is a structure." *Bixler v. Pierson,* 188 So. 2d 681, 682 (Fla. Dist. Ct. App. 1966). Whatever definition of the term "structure" one considers, the Department did not commit an error of law in concluding as it did that the mobile homes in this case were structures.

As the Board found, mobile homes on the property had suffered appreciable damage from previous floods. On one occasion, a mobile home was dislodged and caused damage to other property. Furthermore, the mobile homes are designed for human habitation of a permanent nature and the public health and safety would be seriously affected if the homes were permitted on the property. Although the property owner has adopted his own "rules" requiring, as he contends, that the mobile homes have wheels on and trailer tongues attached, the homes are intended to be located permanently on the property and it has not been proved that the danger to private property and the public health and safety is in fact alleviated by these "rules". The Board's action was not unreasonable.

Affirmed.

DURHAM and SCHOLFIELD, JJ., concur.