[No. 14209–7–I.   Division One.   February 24, 1986.]

RUTHE RIDDER, *Respondent,* v. THE DEPARTMENT
OF REVENUE, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *William B. Collins, Assistant,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William C. Severson, Deputy,* for respondent.

SCHOLFIELD, C.J.—The Department of Revenue entered an order requiring the King County Assessor, Harley Hoppe,[1] to extend certain adjustment amounts onto the 1983 King County tax rolls that the Department had requested be included on the 1980 and 1981 tax rolls. The Superior Court reversed and set aside the Department's order. We reverse the Superior Court and reinstate the Department's order.

FACTS

In 1979, the Legislature passed RCW 84.55.010, which limited the levy for real estate taxes to 106 percent of taxes levied for the highest of the 3 previous years, subject to stated adjustments. RCW 84.48.080 requires the Department to equalize property taxes so that

---

[1]Harley Hoppe served as King County Assessor until 1984, during which time this lawsuit was commenced. His successor, Ruthe Ridder, was substituted as respondent on June 14, 1984.

each county in the state shall pay its due and just proportion of the taxes for state purposes for such assessment year, according to the ratio the valuation of the property in each county bears to the total valuation of all property in the state.

RCW 84.08.010 grants to the Department broad powers of general supervision and control over the administration of the tax laws and requires "equality of taxation and uniformity of administration" with respect to the assessment and collection of all taxes in the state of Washington. RCW 84.08.010(1).

RCW 84.52.065 authorizes a state levy annually for the support of the common schools of $3.60 per thousand dollars of assessed value, subject, however, to the 106 percent limitation in RCW 84.55.010.[2] Both the $3.60 per thousand and the 106 percent limitations operate as ceilings beyond which the State and taxing districts cannot go. Tax levies, therefore, must be the lesser of the two. RCW 84.48.080 and RCW 84.08.010 require uniformity and equalization in the apportionment of the tax burden among the various counties in proportion to the valuation of the taxable property of each county. When a county board of equalization, the State Board of Tax Appeals, or a court of competent jurisdiction enters an order which increases the tax values of property in a county, thus causing the share of the tax burden of that county to go up, this has the effect of causing the share of other counties to go down proportionately. When the state levy is at the maximum level permitted by law, a change which reduces the proportionate share of one

---

[2] RCW 84.55.010 reads as follows:

"Except as provided in this chapter, the levy for a taxing district in any year shall be set so that the regular property taxes payable in the following year shall not exceed one hundred six percent of the amount of regular property taxes lawfully levied for such district in the highest of the three most recent years in which such taxes were levied for such district plus an additional dollar amount calculated by multiplying the increase in assessed value in that district resulting from new construction, improvements to property, and any increase in the assessed value of state-assessed property by the regular property tax levy rate of that district for the preceding year."

county necessarily increases the tax burden on other counties, thereby forcing a levy beyond the limitations imposed by law, and an adjustment is required.

Because of the manner in which real property taxes are assessed and paid, these adjustments many times must be made during the following year. For example, in this case the Department certified the state levy to be collected in 1982 on November 9, 1981. By February 11, 1982, nearly all of the tax statements in King County had been mailed out. If a mistake was discovered or a change in value or ratio ordered after the state levy was certified in November 1981 or after the tax bills had been mailed out in February 1982, a correction could not be made without redoing and reissuing all tax statements. Furthermore, since a change in one county can necessitate a change in the remaining 38 counties, such a procedure would be prohibitively expensive and probably impossible.

To resolve such problems, the Legislature included in former RCW 84.48.080 a provision granting to the Department (formerly the State Tax Commission)

> authority to adopt rules and regulations to enforce obedience to its orders in all matters in relation to the returns of county assessments, and the equalization of values by the department.

Pursuant to that authority, the Department adopted WAC 458-19-550 in 1980. This regulation provided for retrospective adjustment of each county's certified levy amount. These adjustments would reflect changes in the assessed value of properties and possible changes in a county's ratio of assessed value of property to its true value. These adjustments could result in increases or decreases in the proportionate tax burden of the county involved. Where adjustments were indicated, the county assessor was required to adjust the following year's levy by the required amount necessary to carry out the goals of equalization and uniformity for the prior year.

Commencing in November 1980, the Department sent letters to King County Assessor Harley Hoppe telling him

that the 1980 King County levy, payable in 1981, should include an adjustment amount for the 1979 levy, and that the 1981 levy, payable in 1982, should include an adjustment amount for the 1980 levy. In each instance, Hoppe, by letter, declined to include the requested adjustment amounts in the respective levies.

Pursuant to RCW 84.08.120, the Department held a hearing on February 1, 1982, regarding Hoppe's refusal to extend the adjustment amounts onto the tax rolls. The result of that hearing was the issuance of a Department order, docket 82–1, dated March 12, 1982. The Department ordered Hoppe to extend onto the tax rolls in 1983 a sum which consisted of the 1980 levy adjustment and the 1979 levy adjustment, less certain excesses already extended on the tax rolls. The order further required Hoppe to file an affidavit of compliance, which he refused to do. Hoppe then filed a petition for judicial review in King County Superior Court. The Legislature amended RCW 84.48.080 on April 8, 1982, incorporating the provisions of WAC 458–19–550 into the statute. Hoppe also filed an appeal with the Board of Tax Appeals, which held in July 1982 that the Legislature's purpose for the amendment was not to change existing law, but rather to clarify it.

On November 5, 1982, the trial court heard Hoppe's appeal in superior court and issued an order dated April 18, 1983, reversing the decision of the Department. The trial court held that WAC 458–19–550 was in excess of the Department's authority prior to April 8, 1982. The trial court also held that the Department's order was affected by other errors of law without specifying what they were.

While the State has challenged Hoppe's standing to request judicial review of a Department order requiring him to perform a ministerial function, we first address the issue of whether the Department had the authority to order Hoppe to add the adjustment amounts requested by the Department to the King County tax levies in 1980 and 1981.

## STATUTORY AUTHORITY

The Department contends the trial court erred in holding WAC 458–19–550 "in excess of the statutory jurisdiction of the Department of Revenue under RCW 34.04.130(6)(b) to promulgate regulations regarding the state property tax levy prior to April 8, 1982" and in reversing the Department order which directed Hoppe to spread on the tax rolls that portion of the state levy compiled pursuant to WAC 458–19–550.

If the Department had the authority to direct county assessors to assess adjustment amounts arising from changes in the appropriate assessments the previous year, to comply with the law, then the Department had the authority to promulgate WAC 458–19–550. The issue is one of statutory authority.

Hoppe correctly contends that the Department's authority is restricted to the provisions of existing law and that it has no power to act independent of the guidelines and standards set forth in the tax code. *Burlington Northern, Inc. v. Johnston,* 89 Wn.2d 321, 572 P.2d 1085 (1977); *State ex rel. Barlow v. Kinnear,* 70 Wn.2d 482, 423 P.2d 937 (1967).

In *State ex rel. Barlow v. Kinnear, supra,* the Snohomish County Assessor assessed approximately one–half of the real estate in the county at 25 percent of true and fair value and the other half at 20 percent. Because of this disparity, the Tax Commission issued an order compelling the Snohomish County Board of Equalization to reconvene and reduce the 25 percent ratio to 20 percent. This order was challenged on the ground the Commission had no statutory authority to issue assessment equalization orders. The court rejected this contention, but prohibited enforcement of the order because it did not comply with the seventeenth amendment to the state constitution, requiring all assessed valuations to be 50 percent of true and fair value.

In upholding the Commission's statutory authority to act, the court relied, in part, on the powers granted the Commission in former RCW 84.08.010 as follows:

The tax commission shall:

(1) Exercise general supervision and control over the administration of the assessment and tax laws of the state, over county assessors, and county boards of equalization, and over boards of county commissioners, county treasurers and county auditors and all other county officers, in the performance of their duties relating to taxation, and perform any act or give any order or direction to any county board of equalization or to any county assessor or to any other county officer as to the valuation of any property, or class or classes of property in any county, township, city or town, or as to any other matter relating to the administration of the assessment and taxation laws of the state, which, in the commission's judgment may seem just and necessary, *to the end that all taxable property in this state shall be listed upon the assessment rolls and valued and assessed according to the provisions of law, and equalized between persons, firms, companies and corporations, and between the different counties of this state, and between the different taxing units and townships, so that equality of taxation and uniformity of administration shall be secured and all taxes shall be collected according to the provisions of law.*

(Italics ours.)

In *Kinnear,* the court concluded at page 487 in reference to RCW 84.08.010 and 84.08.060:

By prescribing the administrative standards of uniformity and equalization according to the provisions of law, the legislature properly delegated this supervisory power to the Tax Commission.

Also at page 487, the *Kinnear* court determined that the Commission order was necessary in order to comply with the fourteenth amendment to the state constitution, which provides in pertinent part:

All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. . . . All real estate shall constitute one class: . . .

Const. art. 7, § 1 (amend. 14).

In *Boeing Co. v. King Cy.,* 75 Wn.2d 160, 449 P.2d 404

(1969), the State Tax Commission ordered the King County Board of Equalization to reconvene on March 21, 1967, for the purpose of examining Boeing's 1965 personal property tax assessments. Following that reconvened hearing, the Board increased the assessed value of Boeing's personal property. Boeing paid the additional tax and sued for a refund, contending, first, that after the assessment process has been completed in any year, the assessed valuation is final. Further, Boeing contended that any action of a reconvened county board of equalization is void because there was no statutory authority to support it. The court rejected these contentions, relying upon the delegation of authority set forth in RCW 84.08.010(1) and RCW 84.08-.060, stating:

> It is evident that the sweeping grants of power contained in RCW 84.08.060 were intentional. The legislature recognized the need for an agency clothed with sufficient supervisory authority to ensure "equality of taxation and uniformity of administration" in a tax structure badly fractionalized by 39 different county units. *State ex rel. Barlow v. Kinnear,* 70 Wn.2d 482, 423 P.2d 937 (1967). Not only is the authority clearly expressed in the afore–mentioned statute, but the same grant of authority is found in RCW 84.48.010, which relates to the authority of county boards of equalization.

*Boeing Co. v. King Cy.,* at 165–66.

It can hardly be questioned that in the sweeping language of RCW 84.08.010 and .060, the Legislature intended to authorize the Department to take action consistent with the language of the taxing statutes to achieve uniformity and equality in the tax system. In light of article 7, section 1 of the state constitution, requiring uniformity in taxation, the legislative language should be liberally interpreted to achieve that goal. *Burlington Northern, Inc. v. Johnston, supra.*

The facts of this case demonstrate the need for reasonable flexibility in achieving equality and uniformity in the administration of the tax system when it is impacted by the 106 percent limitation to such an extent that those goals

cannot otherwise be achieved in a practical manner.

Hoppe contends that the adjustment amount added to the subsequent year's levy is an *additional* levy and therefore unlawful. We disagree. The adjustment amount is simply a correction and adds only the amount to the subsequent year's levy that should have been included in the levy for the previous year.

Hoppe also contends that when the Legislature adopted WAC 458-19-550 as an amendment to RCW 84.48.080, it amended, rather than just clarified, existing law. Hoppe relies upon the rule that where a material change is made in the language of a statute, a change in legislative purpose is presumed. *In re Bale,* 63 Wn.2d 83, 89, 385 P.2d 545 (1963).

██ There are circumstances, however, where clarifying amendments are recognized as an exception to this presumption. *Bowen v. Statewide City Employees Retirement Sys.,* 72 Wn.2d 397, 403, 433 P.2d 150 (1967); *Johnson v. Continental West, Inc.,* 99 Wn.2d 555, 562, 663 P.2d 482 (1983).

In *Kaiser Cement & Gypsum Corp. v. State Tax Comm'n,* 250 Or. 374, 443 P.2d 233 (1968),[3] the Supreme Court of Oregon held that an amendment to a tax statute was intended by the Legislature to clarify the meaning of the original statute. In a previous decision, the Oregon court interpreted the statute in a manner contrary to the interpretation being given the statute by the Oregon Tax Commission. The amendment had the effect of restoring the interpretation of the Tax Commission and overruling the contrary decision. The court stated:

> It is a well established rule in Oregon that "an amendment to an act may be resorted to for the discovery of the legislative intent in the enactment amended." . . . Under some circumstances the amendment may be tantamount to "a legislative declaration of the meaning" of a

---

[3] Cited with approval in *Kaiser Aluminum & Chem. Corp. v. Department of Ecology,* 32 Wn. App. 399, 403 n.2, 647 P.2d 551 (1982) with respect to intent behind amendment of Department of Ecology regulation.

statute. . . . If the amendment "follows immediately and after controversies have arisen as to the true construction of the prior law it is entitled to great weight" in interpreting the amended statute.

*Kaiser Cement,* at 378. The Oregon court held thusly even though the Legislature did not give the amendment retroactive effect. *Bowen v. Statewide City Employees Retirement Sys., supra,* and *Johnson v. Continental West, Inc., supra,* are in accord.

The circumstances surrounding the legislative confirmation of WAC 458–19–550 fit the criteria stated in *Kaiser Cement.* The Department's hearing on this matter was held on February 1, 1982. The Legislature was in session at that time. It adopted the amendment, which was signed by the Governor on April 8, 1982. These circumstances strongly indicate to us a legislative intent to confirm the Department's interpretation of the statute prior to the 1982 amendment. It did this by incorporating the critical provisions of WAC 458–19–550 into the statute. Had the Legislature not approved of WAC 458–19–550, the rule could have been referred to the rules review committee, pursuant to RCW 34.04.230.

Hoppe argues that the 1982 amendment was not just a clarification amendment because it was not made retroactive. However, since the Legislature was, in effect, saying that the Department's pre–amendment interpretation of its authority under the statute was correct, there was no need to consider retroactivity.

Hoppe also contends that where a change in the levy for a subsequent year is necessary to avoid conflict with the 106 percent limitation or the $3.60 limitation, the problem can be solved by allowing the state levy for that year to become final in a reduced amount.

This theory, however, must fail for two reasons. First of all, changes in a county's levy amount without recalculation of the amounts due for other counties would create inequality. If County A's adjustment was necessary due to originally incorrect assessment amounts, reducing the levy

amount would create an unwarranted change in the relative percentages paid by each county. If County A's adjustment was based on a new ratio value, this would directly alter County A's required percentage, mandating adjustment of the levy amounts of the other counties to reestablish proportionality.

Additionally, an examination of the applicable statutes indicates that the Legislature intended that the Department *maximize* the total amount of the levy. The Department is ordered in RCW 84.52.065 to collect a tax of $3.60 per thousand dollars of assessed value. The requirement is limited only by the 106 percent limit contained in RCW 84.55.010. Hoppe's solution to the adjustment problem would reduce total revenue collected, and thus would violate the intent of RCW 84.52.065 and 84.55.010. If the statute authorizing the tax used permissive language, Hoppe's argument might have merit. Under the current statutory scheme, his argument cannot be supported.

We conclude that the authority delegated to the Department by RCW 84.08.010 and .060 is sufficiently broad to authorize the levy adjustments described in WAC 458–19–550.

### Levy Adjustment for 1979

Hoppe contends the levy adjustment for 1979 was not properly certified by the State to King County. This argument appears to have no support in the record. The certification of the tax levy for 1980, payable in 1981, includes as item 6: "1979 state levy adjustment (WAC 458–19–550)— $1,348,531". Exhibit 3.

We find no merit in this contention.

### Arbitrary and Capricious Action

Hoppe also argues Department order 82-1 was the result of arbitrary and capricious action because several thousand tax appeals by taxpayers were pending at the time he was required to send in "final 1980 assessed values." The record does not tell us how these pending appeals would ultimately affect the tax burden on King County, nor

why any material changes could not be adjusted in the following year pursuant to the procedures challenged in this case.

> Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.

*Pierce Cy. Sheriff v. Civil Serv. Comm'n,* 98 Wn.2d 690, 695, 658 P.2d 648 (1983) (quoting *State v. Rowe,* 93 Wn.2d 277, 284, 609 P.2d 1348 (1980)). Having in mind the requirement that assessed values in the various counties must be available to the Department each year in order for the annual tax levies to be calculated, we find no support in the record for the claim that the Department's order challenged in this case was the result of arbitrary or capricious action.

Having concluded that the Department's order was valid, we need not address the issue of Hoppe's standing to challenge that order.

The judgment in this case is reversed, and the Department's order in docket 82-1 is reinstated without modification.

WILLIAMS and GROSSE, JJ., concur.