[No. 42358.　En Banc.　January 18, 1973.]

Publishers Forest Products Company of Washington, *Appellant,* v. The State of Washington, *Respondent.*

*Carl P. Jensen* (of *Lenihan, Ivers, Jensen & McAteer*), for appellant.

*Slade Gorton, Attorney General, Timothy R. Malone, Senior Assistant,* and *Henry W. Wager, Assistant,* for respondent.

UTTER, J.—Publishers Forest Products Company, in a trial to the court, sought to establish that they were holders of a pollution control exemption certificate and a pollution control tax certificate which would entitle them to a statutory tax credit. The trial court held the certificates were not assignable, that Publishers did not become the owner and holder of the certificate by way of assignment from the original holder, and therefore was not entitled to the tax credit.

The issue presented on appeal is whether a pollution control tax credit granted pursuant to RCW 82.34.060(2) is available to the assignee of the one to whom the credit is initially given. We hold the statute indicates the credit follows the pollution control facility, and is available to an assignee of the original installer when the facility has also been transferred.

Prior to June 27, 1969, Anacortes Veneer Company, Inc. was engaged in the business of manufacturing plywood and in 1968 began the installation of a sander-dust burner in its plant. Installation was completed April 1, 1969, at a total cost of $48,582.14. Anacortes paid sales tax on this amount and a pollution control tax exemption certificate, as provided for under RCW 82.34.060(1), was granted to it by the Washington State Department of Revenue. On April 30, 1969, a supplemental tax certificate was issued to Anacortes.

Pursuant to the tax credit certificate, Anacortes took a tax credit on its excise tax return for May 1969 in the sum of $971.64. On June 27, 1969, all the assets of Anacortes, including the sander-dust burner, were sold to Publishers. On that date, Anacortes also assigned the pollution control tax exemption certificate and the tax credit certificate to Publishers. Publishers attempted to take a tax credit of $971.64 on its excise tax return for June 1970, but the credit was disallowed by the Department of Revenue on the grounds that it was not assignable.

The state's basic argument is that RCW 82.34 was en-

acted solely as an inducement to *install* pollution control facilities and must therefore be strictly construed so as not to permit the credits to be used by one who has later acquired a plant with a facility installed and paid for by someone else. The state contends the provisions of RCW 82.34.050, which extend to exemption or credit from the sales tax for the original installation, and RCW 82.34.060, which extends additional credit against certain future taxes, buttress the conclusion that the legislative intent was solely to provide benefits to the taxpayer who had to bear the original costs of the facility. The state also contends that, inasmuch as the statute applies only to plants constructed prior to July 30, 1967, those who construct new plants or acquire old plants after the air pollution regulations of this state are in effect, are not intended, under the act, to receive tax benefits.

The primary source which we turn to in resolving the issue before us is the intent of the legislature. In construing chapter 82.34 to determine the intention of the legislature, certain commonly understood rules of construction must be applied. The words of the statute must be understood in their usual and ordinary sense in absence of statutory definition. *State v. Roadhs,* 71 Wn.2d 705, 430 P.2d 586 (1967). The words must be construed to give effect to all the language used. *Danley v. Cooper,* 62 Wn.2d 179, 381 P.2d 747 (1963). Each provision must be construed so that each part is given effect with every other part or section. *Tacoma v. Cavanaugh,* 45 Wn.2d 500, 275 P.2d 933 (1954); *In re Kent,* 1 Wn. App. 737, 739, 463 P.2d 661 (1969). All the provisions of an act must be considered in their relation to each other and, if possible, harmoniously construed to insure proper construction of each provision. *Hansen v. Harris,* 123 Wash. 109, 212 P. 171 (1923). The state's contentions, if granted, would make it impossible to give effect to the foregoing rules of construction and to harmonize the separate provisions of chapter 82.34.

Under RCW 82.34.060 an additional tax credit is

granted to offset, in part, the expense of installation of pollution control devices within that period of time. The credit is based upon the final construction figures for installation of the facility and is granted to the one who initially installs the equipment. The language of the statute, however, is such that had Anacortes installed the facility before June 30, 1967, and Publishers purchased before that date, Publishers would have been entitled to apply for and receive a tax credit. This would seem to negate any implication that the legislature only intended to favor those who originally installed the equipment.

The legislature defined pollution control facilities to include those acquired as well as installed. RCW 82.34.010.[1] The act, by its language, does not limit the holder of a tax credit certificate to the taxpayer who installed a required and approved pollution control facility. RCW 82.34.010(5).[2]

The legislature authorized a tax credit for each year the certificate remains in force up to a maximum of 25 years. On the face of this, it is reasonable to assume that the legislature deemed foreseeable the possible transfer of the facilities during that period of time. The failure to limit the statute's applicability to the original installer alone indicates an intent by the legislature to allow the tax credit to

---

[1] RCW 82.34.010. Definitions. "Unless a different meaning is plainly required by the context, the following words as hereinafter used in this chapter shall have the following meanings:

"(1) 'Facility' shall mean an 'air pollution control facility' or a 'water pollution control facility' as herein defined: (a) 'Air pollution control facility' includes any . . . control devices . . . installed or acquired for the primary purpose of reducing, controlling or disposing of industrial waste which if released to the outdoor atmosphere could cause air pollution."

[2] RCW 82.34.010(5). " 'Certificate' shall mean a pollution control tax exemption and credit certificate for which application has been made not later than December 31, 1969: *Provided,* That with respect solely to a facility required to be installed in an industrial, manufacturing, waste disposal, utility, or other commercial establishment which is in operation or under construction as of July 30, 1967, such application will be deemed timely made if made within one year after the effective date of specific requirements for such facility promulgated by the appropriate control agency."

follow the owner of the facility. This conclusion is buttressed by the fact that the amount of the credit allowed for a reporting period is offset by the net commercial value of any materials captured or recovered through use of the facility. RCW 82.34.060(2)(b).[3] The question of whether there is a recovery and, if so, what amount, is within the control of the operator of the facility, not the previous owner who has since sold. To fail to allow for assignability would leave the holder with no method of controlling the amount of his credit.

The statute provides that if the facility covered by a certificate is no longer operative for pollution control purposes, the certificate is either modified or revoked. RCW 82.34.100.[4] The statute further provides that if a determination is made subsequent to issuance of a certificate for a facility to modify or replace the facility, the holder of the certificate may, in effect, obtain a new value for his certificate based upon the cost of the modified or replaced facility. RCW 82.34.080.[5] To hold Publishers could not have

---

[3]RCW 82.34.060(2)(b). "The net commercial value of any materials captured or recovered through use of a facility shall, first, reduce the credit allowable in the current reporting period and thereafter be applied to reduce any credit balance allowed and not yet utilized: *Provided,* That for the purposes of this chapter the determination of 'net commercial value' shall not include a deduction for the cost or depreciation of the facility."

[4]RCW 82.34.100. "Revision of prior findings of appropriate control agency—Grounds for modification or revocation of certificate or supplement. The water pollution control commission or the state air pollution control board . . . shall . . . revise the prior findings of the appropriate control agency whenever any of the following appears:
". . .
"(2) The facility covered by the certificate or supplement thereto is no longer operated primarily for the purpose of the control or reduction of water pollution or the control, capture, and removal of pollutants from the air, as the case may be, or is no longer suitable or reasonably adequate to meet the intent and purposes of chapter 70.94 RCW or chapter 90.48 RCW, in which case the certificate shall be modified or revoked."

[5]RCW 82.34.080. "Modification or replacement of facility. If subsequent to the issuance of a certificate or supplement for a facility, a determination is made to modify or replace such facility, the holder

the benefits of the certificate originally obtained by Anacortes would mean that if Publishers, after purchase, modified or replaced the facility for which Anacortes obtained the certificate the value of the certificate to Anacortes would increase although Anacortes had nothing to do with the subsequent increase of the certificate's value and Publishers would receive nothing though it made the expenditures.

For these reasons, we believe the various provisions of the statute can be harmonized only if the certificate is deemed capable of assignment to the subsequent purchaser of the original qualifying certificate holder.

We do not reach the other questions raised on appeal inasmuch as the legislative intent that the certificate be assignable may be ascertained from the words of the statute without need to resort to additional rules of construction as an aid in determining legislative intent. The certificate is assignable and Publishers, therefore, is entitled to the tax credit on its excise tax return in the same manner to which Anacortes would have been entitled.

Judgment reversed.

FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, and WRIGHT, JJ., concur.

HALE, C.J., dissents.

---

thereof may file an application for a new certificate or supplement covering such modified or replacement facility in accordance with the procedures set forth in this chapter for original certificates and supplements thereto. After the issuance by the department of any new certificate or supplement, all subsequent tax exemptions and credits for the modified or replacement facility shall be based thereon."