[No. 44963.   En Banc.   June 7, 1979.]

INTERNATIONAL PAPER COMPANY, *Respondent*, v. THE
DEPARTMENT OF REVENUE, *Appellant*.

LONGVIEW FIBRE COMPANY, *Respondent*, v. THE
DEPARTMENT OF REVENUE, *Appellant*.

*Slade Gorton, Attorney General,* and *L. E. Dreisbach,
Assistant,* for appellant.

*John T. Piper* and *Bogle & Gates,* for respondents.

BRACHTENBACH, J.—The issue here is whether respondents International Paper Company (IP) and Longview Fibre Company (LF) timely applied under RCW 82.34-.010(5) for pollution control tax exemption and credit certificates.

RCW 82.34 provides that taxpayers who purchase a properly certified pollution control facility are exempt from sales or use taxes. Alternatively, they can elect to take a credit against taxes due under the business and occupation tax, use tax, or public utility tax. Pollution control "facilities" include treatment works, control devices, disposal systems, and any other equipment installed for the primary purpose of controlling air or water pollution. RCW 82.34-.010(1).

After installing air pollution control facilities, IP and LF applied to appellant Department of Revenue (Revenue) for tax exemption and credit certificates. IP applied for a certificate in 1971 and for another certificate in 1973. LF applied for one certificate in 1972 and for another three in 1973. The director of Revenue denied the applications as untimely. The Superior Court reversed the director's decision and ordered him to process the applications. We accepted direct review. We affirm on different grounds and remand for processing of the applications in accordance with this opinion.

To be eligible for RCW 82.34's tax exemptions and credits, a taxpayer must timely apply for "a pollution control tax exemption and credit certificate." RCW 82.34.010(5) provides that such an application "will be deemed timely made if made within one year *after the effective date of specific requirements for such facility promulgated by the appropriate control agency.*" (Italics ours.)

The parties dispute the meaning of this language from RCW 82.34.010(5). They agree that the "appropriate control agencies" are the Department of Ecology (DOE) and the Southwest Air Pollution Control Authority (SWAPCA).

*See* 82.34.010(6). They also agree that the "specific requirements for such facility" are the compliance schedules "promulgated" by DOE and SWAPCA, which establish a particular plant's timetable for control of its pollutants. They differ, however, on the interpretation they give the term "effective date."

Revenue argues that its director correctly ruled that the "effective date" of a compliance schedule is the date which the schedule is issued, *i.e.*, the issuance date. Respondents argue that the Superior Court correctly ruled that the "effective date" is the date on which the pollution control facility finally is in operation as required by the schedule, *i.e.*, the operative date. However, we believe that the "effective date" mentioned in RCW 82.34.010(5) is neither the issuance date nor the operative date.

We look to the intention of the legislature to resolve this issue. While statutory exceptions from taxing laws are construed narrowly, *Evergreen–Washelli Memorial Park Co. v. Department of Revenue*, 89 Wn.2d 660, 663, 574 P.2d 735 (1978), we have on a previous occasion harmonized the words and provisions of RCW 82.34 to ascertain legislative intent. *Publishers Forest Prods. Co. v. State*, 81 Wn.2d 814, 816–19, 505 P.2d 453 (1973). In *Publishers,* we harmonized RCW 82.34's various provisions to find the legislature's intent to permit the assignment of pollution control tax exemption and credit certificates. When we harmonize the various provisions of RCW 82.34 here, we find that the term "effective date" in RCW 82.34.010(5) was meant by the legislature to refer to a compliance schedule's date for completion of engineering.

A compliance schedule establishes a timetable within which a specific plant or source of pollution must control its emission of pollutants to comply with the general emission standards adopted by DOE and SWAPCA. A compliance schedule normally includes four dates for (a) completion of engineering; (b) ordering of equipment; (c) installation of equipment; (d) final and full compliance with control order. Date (a), the engineering completion date, is

the schedule's "effective date." This result is compelled by the harmonization of RCW 82.34.

Although DOE and SWAPCA do not have authority to require the installation of any particular pollution control equipment, they do review proposed engineering plans to determine adequacy and speediness of installation and operation. Likewise, they oversee the proper installation of equipment.

The record here indicates that frequently the engineering—the first step in the compliance process—is neither set for completion nor approved by DOE or SWAPCA until more than a year after the issuance of the compliance order. If certificate applications must be filed within 1 year of this issuance date, as appellant argues, a number of taxpayers therefore cannot comply with RCW 82.34's other provisions. The result is disharmony in the statute.

For example, the application procedure for a pollution control tax exemption and credit certificate is outlined in RCW 82.34.020. That section provides:

> An application for a certificate shall be filed with the department in such manner and in such form as may be prescribed by the department. The application shall contain estimated or actual costs, plans and specifications of the facility including all materials incorporated or to be incorporated therein and a list describing, and showing the cost, of all equipment acquired or to be acquired by the applicant for the purpose of pollution control, together with the operating procedure for the facility, or a time schedule for the acquisition and installation or attachment of the facility and the proposed operating procedure for such facility.

Here, because LF's engineering due date was 16 months after issuance of its compliance schedule, it could not possibly within 1 year from the issuance date provide Revenue with "estimated or actual costs, plans and specifications," "materials incorporated or to be incorporated," "equipment acquired or to be acquired," or "the operating procedure . . . and the proposed operating procedure." And, while

IP's engineering due date was within 3 months of the issuance date of the compliance schedule, it could not possibly provide Revenue with RCW 82.34.020 data within 1 year of the issuance date because its engineering plans were not approved by SWAPCA until 18 months after that date. This result does not harmonize with RCW 82.34.020.

Moreover, if certificate applications must be filed within 1 year of the operative date, as respondents argue, then RCW 82.34.020's mention of estimated costs, plans and specifications is meaningless. This result creates disharmony in RCW 82.34 since effect must be given, if possible, to every word in a statute. *Metcalf v. Department of Motor Vehicles,* 11 Wn. App. 819, 822, 525 P.2d 819 (1974); 2A C. Sands, *Sutherland's Statutory Construction* § 46.06, at 63 (4th ed. 1973).

We hold that, under RCW 82.34.010(5), IP and LF had 1 year from the date on which engineering for their plants was to be completed to make timely applications for pollution control tax exemption and credit certificates. We remand the cause to process respondents' applications in accord with the view expressed herein.

UTTER, C.J., and STAFFORD, WRIGHT, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

ROSELLINI, J. (dissenting)—The majority has misconstrued the statute in holding that the effective date is the completion date of the engineering.

When should the 1 year begin to run? It is the position of the department that the date when a compliance schedule was issued sets the time period within which emission standards must be met by the particular taxpayer. The position of plaintiffs before the department and the trial court was the date when the appropriate air or water pollution control agency approved, prospectively, particular facilities as satisfying its requirements. It should be noted the trial court did not agree with plaintiffs' position: "I don't see that in the statute."

When you consider RCW 82.34.010(5),

> such application [for exemption] will be deemed timely made if made within one year after the effective date of specific requirements for such facility *promulgated by the appropriate control agency*[,]

(Italics mine.) and

> (6) "Appropriate control agency" shall mean the state water pollution control commission; or the operating local or regional air pollution control agency within whose jurisdiction a facility is or will be located, or the state air pollution control board, where the facility is not or will not be located within the area of an operating local or regional air pollution control agency, or where the state air pollution control board has assumed jurisdiction[,]

the effective date comes into focus.

On the validity of the promulgation of the compliance schedule as the starting date, the director of revenue said in his decision:

> Petitioners argue that "compliance schedules" set forth requirements for reducing pollutant sources not requirements for specific facilities to reduce pollutants. Thus, they contend that the date the facility is finally in operation, and in compliance, should be the starting date for the running of the one–year statute. I cannot accept that proposition. First, the interpretation does not give due consideration to the legislative use of the word "promulgate." The legislature provided that the promulgation by the appropriate control agency is the operative event for commencing the time period in which an application must be made. Second, this interpretation does not give due consideration to the legislative reference to a "facility required *to be installed*" which is clearly a future tense reference to the installation of equipment. Third, it is my opinion that the legislature's basic intent in enacting this incentive legislation was to hasten the elimination of air and water pollutants. The floor amendment to Section 1 (6) of House Bill 946 (House Journal, page 1538, March 21, 1967), providing time limitations on the right to the tax benefits, was clearly for the purpose of speeding the process for the elimination of such pollutant. The application deadline, which is a limitation on the time for filing applications, is a limitation upon the

right granted by the legislature for such tax credit or tax exemptions.

Undoubtedly time difficulties did exist for the applicants. Similar problems were solved by other applicants. We are confronted here, however, with the legislative mandate that the one year statute of limitation commence with a "promulgation" which in my judgment requires a governmental decision with some degree of formality.

"Promulgate" is defined in the American Heritage Dictionary as

1. "To make known (a decree, law or doctrine) by public declaration; announce officially.
2. To put (a law) into effect by public pronouncement."

Black's Law Dictionary (1st Ed.) provides this definition

"to publish, to announce officially; to make public as important or obligatory."

I have concluded the issuance of a compliance schedule (for air) or a waste discharge permit (for water) is the act of promulgation that commences the year statute of limitation running. DOE and SWAPCA are not concerned with the specific type of facility to be installed but rather the time schedule for meeting performance standards. The specific compliance schedules are founded on previous or simultaneously published general emission control or effluent standards but are tailored to the requirements of a particular "facility" when it is determined that such facility is needed.

On the final point made by the director, the colloquy in the 1967 House Journal is instructive:

Mr. Holman [Vice–Chairman of the Committee on Revenue and Taxation, which reported the bill] moved adoption of the following amendment:

·On page 2, section 1, line 17, strike the period and add the following: "for which application has been made not later than December 31, 1969: *Provided,* That with respect solely to a facility required to be installed in an industrial, manufacturing, waste disposal, utility, or other commercial establishment which is in operation or under construction as of the effective date of this act, such application will be deemed timely made if made within

one year after the effective date of specific requirements for such facility promulgated by the appropriate control agency."

### YIELDING TO QUESTION

At the request of Mr. Adams, Mr. Holman yielded to question.

Mr. Adams:

"What is the effective date where the rules and regulations haven't been promulgated? Where do they stand?"

Mr. Holman:

"If no rules and regulations are yet promulgated, they would have until December 31, 1969 to make their application, and if by that date they still haven't been promulgated they would have a year after the date of promulgation."

Mr. Adams:

"If this amendment is not adopted, what date would apply or is the date anywhere in the act?"

Mr. Holman:

"There is no date in the act, as I understand it, as it now exists."

House Journal, 40th Legislature (1967), at 1538–39.

Where statutory language is ambiguous, statements made by the legislative committee spokesperson in response to questions on the floor may be taken as the committee's opinion as to the meaning of the legislation. *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 494 P.2d 216 (1972).

Finally, the plaintiffs imply the compliance schedule date is somehow unfair to them in that the time between the promulgation of the compliance schedule and the completion of the engineering as contemplated by the compliance schedule is insufficient. The short answer to this complaint is that the dates on the compliance schedule were those originally proposed by the plaintiffs to the Department of Ecology and to the Southwest Air Pollution Control Authority.

A more complete answer is the statute itself never contemplated that the first application would contain all the information necessary for the final court determination under RCW 82.34.060. Rather, the statute refers to:

estimated . . . costs, plans and specifications . . . to be incorporated . . . and . . . equipment . . . to be acquired . . . together with . . . a time schedule for the acquisition and installation or attachment of the facility and the proposed operating procedure for such facility.

RCW 82.34.020. *See also* RCW 82.34.050–.060, and .100.

The position of the director comports with the purpose of the statute and provides for a harmonious working of it. *See Publishers Forest Prods. Co. v. State,* 81 Wn.2d 814, 505 P.2d 453 (1973). The position of the trial court and the majority simply misconstrues the statute and does violence to a carefully conceived plan.

I would reverse the trial court and restore the decision of the director.