[No. 54099–3.   En Banc.   July 13, 1989.]

*In the Matter of the Personal Restraint of*
DOUGLAS S. FLETCHER, *Petitioner.*

*MacDonald, Hoague & Bayless,* by *Timothy K. Ford,* for petitioner.

*Gary P. Burleson, Prosecuting Attorney,* and *Robert W. Johnson* and *Victoria Meadows, Deputies; Kenneth O. Eikenberry, Attorney General,* and *William L. Williams* and *Aaron K. Owada, Assistants,* for respondent.

CALLOW, C.J.—The defendant, Douglas S. Fletcher, pleaded guilty to first degree kidnapping, first degree robbery, and first degree assault. He subsequently was sentenced to three 33–year terms to run consecutively. Fletcher contends that the imposition of consecutive sentences violates double jeopardy and merger principles. We disagree.

## I

On February 21, 1979, Douglas Fletcher and Ivan Dishon made plans to rob the Agate store. While driving to the store, they decided that they needed another vehicle to commit the robbery, as they were currently using Fletcher's parents' car. When they pulled up to an intersection, Dishon jumped out of the car and forced his way into another car at gunpoint. The car was occupied by two women. Dishon drove the women's car, and Fletcher followed in his parents' car. The pair drove several miles to a

deserted logging road, where Dishon ordered the women to get out of the car. Fletcher and Dishon told the women to begin walking up the road. Both women were pleading for mercy and eventually got down on their knees to beg. Fletcher shot one woman, while Dishon shot the other woman and then shot the first woman a second time. After the shooting, Dishon and Fletcher drove off, leaving the women to die. Both women were shot in the head and were seriously and permanently injured. The men were arrested later that evening.

On February 22, 1979, the Mason County Prosecutor filed an information charging Fletcher with two counts of first degree kidnapping, two counts of first degree assault, one count of first degree robbery, and one count of auto theft. On March 27, 1979, the prosecutor filed an amended information, charging Fletcher and Dishon jointly with the same counts. The information also included a statement that Fletcher and Dishon were armed with deadly weapons or firearms as defined by RCW 9.95.040 and former RCW 9.41.025 at the time of the commission of the crimes.[1] On April 12, 1979, Fletcher pleaded guilty to first degree kidnapping, first degree assault, and first degree robbery in connection with the attack on one of the women. The information describes the three counts to which Fletcher pleaded guilty as follows:

COUNT I [kidnapping]
That . . . FLETCHER . . . on or about February 21, 1979, did with intent to facilitate commission of a felony of robbery and flight thereafter, or with intent to inflict bodily injury on [the victim], or with intent to inflict extreme emotional distress on [the victim], did intentionally abduct the said [the victim].
COUNT III [assault]
That . . . FLETCHER . . . on or about February 21, 1979, with intent to kill [the victim], . . . or with intent to commit

---

[1]RCW 9.95.040 provides in part that a minimum sentence of 5 years will be imposed on a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense. The minimum sentence is 7½ years if the person has previously been convicted of a felony. RCW 9.41.025, which has since been repealed, included a similar provision.

the felony of robbery upon the person or property of [the victim], did assault such person with a firearm or deadly weapon.

COUNT V [robbery]

That . . . FLETCHER . . . on or about February 21, 1979, did unlawfully take personal property, to–wit: a 1972 Datsun stationwagon [sic], from the person and in the presence of [the victim], against her will, by use or threatened use of immediate force, violence and fear of injury to such person, and in the commission of and immediate flight therefrom the Defendants were armed with deadly weapons, to–wit: guns, and inflicted bodily injury upon [the victim].

In his statement on plea of guilty, Fletcher stated that:

On February 21, 1979, Ivan Dishon, and I kidnapped 2 women in Mason County. We did this in order to steal their car . . . During this time, I shot [the victim] with a .22 rifle. During the kidnapping and theft of the car, Ivan Dishon used a .22 pistol in my prescence [sic] and with my knowledge.

On June 14, 1979, the court sentenced Fletcher, imposing maximum sentences of life imprisonment on each count, with minimum sentences to be set by the Board of Prison Terms and Paroles (Board). The court also made special findings that Fletcher was armed with a firearm as defined by former RCW 9.41.025 and a deadly weapon, as defined by RCW 9.95.040, in the kidnapping count and with a deadly weapon, as defined by RCW 9.95.040, in the other two counts. The Board set Fletcher's minimum terms at 33 years for each count, to run consecutively, with a 5–year mandatory minimum pursuant to RCW 9.95.040 on each count.

Fletcher subsequently filed a personal restraint petition, raising double jeopardy and merger claims, and asking that his sentence be reviewed under the sentencing reform act. On June 2, 1987, the Court of Appeals entered an order dismissing Fletcher's petition. The Indeterminate Sentence Review Board subsequently reconsidered Fletcher's sentences. The Board reduced his sentences, but determined that they should continue to run consecutively. Fletcher then filed a petition for review with this court, arguing that

the imposition of consecutive sentences violated double jeopardy and merger principles.

After we accepted review, the Board again reconsidered Fletcher's sentences, this time setting the minimum terms to run concurrently. Because of the Board's action, Fletcher moved to dismiss this appeal as moot.

However, despite the Board's decision, Fletcher's maximum terms continue to be consecutive. It appears that these sentences might deleteriously affect Fletcher's offender score treatment under former RCW 9.94A.360 if he should subsequently be convicted of another crime. As Fletcher now acknowledges, the issues raised by his petition are not moot.

## II(A)

Fletcher asserts that the imposition of consecutive sentences for his kidnapping, robbery, and assault convictions constitutes multiple punishments for the same offense in violation of the guaranties set forth in the double jeopardy clause of the United States Constitution. The double jeopardy clause provides that no person shall "be twice put in jeopardy of life or limb" for the same offense. The double jeopardy clause is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 787, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969).

Over a century ago, the United States Supreme Court recognized that the double jeopardy clause protects against the imposition of multiple punishments for the same offense. *See Ex parte Lange,* 85 U.S. (18 Wall.) 163, 168, 21 L. Ed. 872 (1873). However, *Brown v. Ohio,* 432 U.S. 161, 165, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1976) stated that:

> Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.

*Missouri v. Hunter,* 459 U.S. 359, 366, 74 L. Ed. 2d 535, 103 S. Ct. 673 (1983) added that:

With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.

The double jeopardy clause does not prohibit the imposition of separate punishments for *different* offenses. *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983) held that:

> In order to be the "same offense" for purposes of double jeopardy the offenses must be the same in law and in fact. If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.

### II(B)

The test set forth in *Vladovic* involves two components. First, the offenses must be factually the same. If "proof of one offense would not necessarily also prove the other", double jeopardy would not protect against multiple punishments. *Vladovic,* at 423. In *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981) the defendant was charged with first degree assault, second degree burglary, and first degree theft. The burglary and theft charges also included special allegations that the defendant was armed with a deadly weapon. The charges arose out of an incident in which the defendant and two accomplices broke into a tool shop and stole tools and a truck. A jury found the defendant guilty on all three counts and also found that he had been armed with a deadly weapon on the burglary and theft counts. *Claborn,* at 631.

The defendant contended that the deadly weapons findings on both the burglary and theft counts constituted double jeopardy because the burglary and theft arose out of the same transaction. *Claborn,* at 636. The court said:

> While the *state of being armed* was the same in both the burglary and the theft, the *acts performed* to constitute the two

enhanced crimes are quite different both physically and chronologically. Under the facts of this case the burglary was complete once appellant entered the building with intent to steal property therein. The theft occurred after the unlawful entry and took place only when appellant actually took the property. It continued until after he left the building, loaded the truck and drove away. In short, these were separate crimes with distinctly different elements, committed during different segments of time. At best they were only close in point of time . . . A person is not subjected to double jeopardy because two charges arise from the same general incident unless the evidence required to support a conviction on one of them would have been sufficient to warrant a conviction on the other.

(Footnotes omitted.) *Claborn*, at 636–37.

In *State v. Mahoney*, 40 Wn. App. 514, 699 P.2d 254 (1985), the defendant was convicted of first degree robbery and second degree assault. He appealed, asserting that the force element of the assault charge was the same force alleged as an element of the robbery charge, and therefore the prohibition against double jeopardy prevented his convictions on both charges. The charges arose out of an incident in which the defendant attacked his foster mother in the garage of her home and pushed her into a car in the garage. The defendant then released the woman, followed her into the house, and demanded her wallet. After she had complied, the defendant then told her husband to give him his wallet. The defendant was convicted of second degree assault against his foster mother and first degree robbery against her husband. *Mahoney*, at 515–16.

The court stated:

At the time of the assault, there was no attempt at robbery. The money was taken from Mr. Dooley inside the house, but no injury was inflicted at that time and no weapon was present. We believe it is significant that infliction of injury had ceased before the robbery attempt was made. Because the acts constituting the assault were separate and distinct from the acts alleged in the first degree robbery count, there is . . . no risk of double jeopardy.

(Citations omitted.) *Mahoney,* at 517; *see also Owens v. United States,* 497 A.2d 1086, 1096 (D.C. 1985) (when victim is assaulted after robbery is completed, assault will be treated as a separate offense).

In this case, the charges against Fletcher were based on the theft of the vehicle, the kidnapping of the owner, and the later shooting. The robbery and kidnapping occurred simultaneously at the moment when Dishon forced his way into the vehicle at gunpoint. Because they occurred simultaneously and the same evidence would be used to prove both crimes, the robbery and kidnapping charges are factually the same.

However, the assault did not take place until after the robbery and kidnapping were completed. As in *Claborn* and *Mahoney,* the initial crime was over before the later one was committed. In this case, different evidence would be used to prove the assault than would be used to prove the earlier crimes. Thus, the assault is not the same offense in fact as the robbery and kidnapping, and Fletcher may be punished separately for the assault without violating double jeopardy principles.

## II(C)

The second part of the *Vladovic* test requires that offenses be the same in law in order to constitute the same offense for purposes of double jeopardy. If each offense, *as charged,* includes elements not included in the other, the offenses are different, and multiple punishments can be imposed. *Vladovic,* at 423. In *Vladovic,* the defendant was convicted of attempted first degree robbery, first degree robbery, and four counts of first degree kidnapping. We held that double jeopardy did not prohibit his conviction on both the robbery and kidnapping charges. In *Vladovic,* the elements of robbery, as charged include (1) a taking of personal property (2) from the person or in one's presence (3) by the use or threatened use of force, or violence, or fear of injury, (4) such force or fear being used to obtain or retain possession of the property, and (5) displaying what

appears to be a deadly weapon. The elements of kidnapping include (1) intentionally abducting the victim (2) to facilitate the commission of a crime. "Abduct" means to restrain the victim's movements without his consent by use or threatened use of *deadly* force. RCW 9A.40.010(2)(b). Thus, in order to prove robbery, the State was required to prove a taking of personal property, which is not an element of kidnapping. Conversely, in order to prove kidnapping, the State was required to prove the use or threatened use of *deadly* force, which is not an element of robbery. Since each offense included an element not included in the other, double jeopardy did not prevent Vladovic's conviction on both charges. *Vladovic*, at 423–24.

In this case, Fletcher has also been charged with first degree kidnapping and first degree robbery. The indictment charged Fletcher with kidnapping by (1) intentionally abducting the victim (2) with intent to facilitate the commission of a felony of robbery and flight thereafter, or (3) with intent to inflict bodily injury on the victim, or (4) with intent to inflict extreme emotional distress on the victim. Fletcher was charged with robbery by (1) unlawfully taking personal property (2) from the person and in the presence of the victim (3) against her will (4) by use or threatened use of immediate force, violence, or fear of injury (5) while armed with a deadly weapon. As was the case in *Vladovic*, the kidnapping charge required proof of use or threatened use of deadly force, which is not an element of robbery, while the robbery charge required proof of taking of personal property, which is not an element of kidnapping. Thus, the kidnapping and robbery charges are not the same offense. Fletcher can be punished for both crimes without violating double jeopardy principles.

### III

Fletcher also argues that his sentences should be vacated under the merger doctrine. Merger refers to a "doctrine of statutory interpretation used to determine whether the Legislature intended to impose multiple punishments for a

single act which violates several statutory provisions." *State v. Vladovic*, 99 Wn.2d 413, 419 n.2, 662 P.2d 853 (1983). The doctrine only applies:

> where the Legislature has clearly indicated that in order to prove a particular degree of crime (*e.g.*, first degree rape) the State must prove not only that a defendant committed that crime (*e.g.*, rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.*, assault or kidnapping).

*Vladovic*, at 421.

In *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979), *cert. dismissed*, 446 U.S. 948 (1980), the defendant was convicted of two counts each of first degree rape, first degree kidnapping, and first degree assault. The convictions resulted from an incident in which the defendant picked up two girls, took them to his cabin, and raped them. In order to prove first degree rape, the State must prove that the rape was accompanied by an act which is defined as a separate crime elsewhere in the criminal statutes. *Johnson*, at 675. We concluded that:

> the legislature intended that conduct involved in the perpetration of a rape, and not having an independent purpose or effect, should be punished as an incident of the crime of rape and not additionally as a separate crime.

*Johnson*, at 676. We held that the defendant's kidnapping and assault convictions merged into the rape conviction.

In *Vladovic*, we addressed the merger issue in the context of convictions for attempted first degree robbery, first degree robbery, and kidnapping. We distinguished *Vladovic* from *Johnson*, stating that in order to prove first degree rape, the State must prove conduct constituting at least one additional crime other than rape. *Vladovic*, at 419. In contrast, the State can prove first degree robbery without also proving conduct constituting an additional crime. Specifically, proof of kidnapping is not necessary in order to prove robbery. Thus, we concluded that the Legislature did not intend that kidnapping should merge into a robbery conviction. *Vladovic*, at 421.

█ Fletcher was convicted of first degree kidnapping, first degree robbery, and first degree assault. If these crimes have "independent purposes or effects", they may be punished separately. *Vladovic,* at 421. Otherwise, the merger doctrine may apply.

As stated, the robbery and kidnapping occurred simultaneously, when Dishon forced himself into the vehicle. Fletcher stated that he and Dishon kidnapped the women in order to steal their car. Thus, the kidnapping was incidental to and a part of the robbery, and did not have an independent purpose or effect, but the assault was separated from the earlier crimes in time and place. The robbery and kidnapping were complete at the time the assault occurred, and the assault was not necessary to carry out these crimes. Because the assault had an "independent purpose or effect", it is not subject to the merger doctrine, and Fletcher may be punished separately for the assault.

█ In order to determine whether the robbery and kidnapping convictions should merge it is necessary to examine the elements of each crime to ascertain whether the Legislature intended that the crimes should be punished separately. Proof of kidnapping is not necessary to prove robbery and the kidnapping conviction did not merge into the robbery conviction.

*Vladovic* stated in dicta that robbery could merge into kidnapping. We said that the first degree kidnapping statute specifically requires proof of another felony in order to elevate the crime to first degree kidnapping. *Vladovic,* at 421. However, the statute only requires proof of *intent* to commit various acts, some of which are defined as crimes elsewhere in the criminal code. It does not require that the acts actually be committed. RCW 9A.40.020.[2] A reading of

---

[2]RCW 9A.40.020 states:

"**Kidnapping in the first degree.** (1) A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent:

"(a) To hold him for ransom or reward, or as a shield or hostage; or

"(b) To facilitate commission of any felony or flight thereafter; or

"(c) To inflict bodily injury on him; or

the statute makes it clear that the person who intentionally abducts another need do so only with the *intent* to carry out one of the incidents enumerated in RCW 9A.40-.020(1)(a) through (e) inclusive; not that the perpetrator actually bring about or complete one of those qualifying factors listed in the statute. Thus, the Legislature has not indicated that a defendant must also commit another crime in order to be guilty of first degree kidnapping, and therefore the merger doctrine does not apply. As a result, Fletcher may be punished separately for the kidnapping and robbery convictions.

The order of the Court of Appeals dismissing Fletcher's personal restraint petition is affirmed.

BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and DURHAM, JJ., concur.

UTTER, J. (dissenting)—The majority bypasses the issues of mootness in this case. Realistically, this case does not present a genuine controversy. Worse, the majority misapplies the principles this court has developed in the area of merger. For these reasons, I dissent.

The majority's reasons why this court should decide Mr. Fletcher's case are not convincing. Although the majority points out that Mr. Fletcher himself now "acknowledges" that the case is not moot, see majority at 46, a party's position on mootness has no bearing on whether or not a controversy actually exists.

The majority indicates, at pages 45–46, that the Indeterminate Sentence Review Board reconsidered Mr. Fletcher's sentences after this court accepted review. The Board set Mr. Fletcher's minimum sentences to run concurrently. At issue, then, according to the majority, is solely the impact of the *maximum* sentences. The majority finds that under former 9.94A.360(5)(c), these consecutive maximums

---

"(d) To inflict extreme mental distress on him or a third person; or

"(e) To interfere with the performance of any governmental function.

"(2) Kidnapping in the first degree is a class A felony."

"might deleteriously affect" his offender score if he were to be convicted of another crime. Majority, at 46.

The majority, however, does not fully address the implications of the Board's treatment of Mr. Fletcher's case. In resetting Mr. Fletcher's minimum sentences to run concurrently in light of the sentencing reform act, the Board found that his offenses constituted the "same criminal conduct." Thus, under former RCW 9.94A.360(5)(a), his three sentences would be treated as one for determining the sentence of any future offense of which he may be convicted. The majority apparently assumes that Mr. Fletcher's consecutive maximum terms would be the sole factor in determining any possible future offender score. The majority arrives at this assumption by applying former RCW 9.94A-.360(5)(c) without any analysis why this subsection should be applied over former .360(5)(a). Majority, at 46. Such a leap of faith is unwarranted and, as it turns out, incorrect.

Former subsection (5)(a) applies to "[p]rior adult offenses which were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct . . ."[3] Former subsection (5)(c) applies to "multiple prior convictions for offenses committed before July 1, 1986 . . ."[4] Thus, the possible future impact of Mr. Fletcher's minimum terms, because the Board found them to constitute the same

---

[3]RCW 9.94A.360(5)(a) reads in its entirety:

"Prior adult offenses which were found, under RCW 9.94A.400(1)(a), to encompass the same criminal conduct, [sic] shall be counted as one offense, the offense that yields the highest offender score. The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently whether those offenses shall be counted as one offense or as separate offenses, and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used;"

[4]Former RCW 9.94A.360(5)(c) reads in its entirety:

"In the case of multiple prior convictions for offenses committed before July 1, 1986, for the purpose of computing the offender score, count all adult convictions served concurrently as one offense, and count all juvenile convictions entered on the same date as one offense. Use the conviction for the offense that yields the highest offender score."

criminal conduct under the test derived from RCW 9.94A-
.400(1)(a), is governed by former subsection (5)(a). The
impact of his maximum terms—because he committed the
offenses before July 1, 1986—could also be construed to fall
under former (5)(c). However, such bifurcation of potential
sentencing implications in the future, aside from being
untowardly speculative, can only lead to confusion.

Where a defendant has been sentenced for offenses that
he committed before July 1, 1986, and also has had his
minimum sentences refactored in light of the sentencing
reform act, only one subsection of the offender score provi-
sion should apply. For a number of reasons, that provision
should be former (5)(a). For one, this court follows the rule
of statutory construction that avoids reading statutes so
that one provision renders another meaningless. To do this,
we read the statute as a whole and attempt to harmonize
its provisions in relation to one another. *See Addleman v.
Board of Prison Terms & Paroles,* 107 Wn.2d 503, 509, 730
P.2d 1327 (1986); *Hanson v. Tacoma,* 105 Wn.2d 864, 871,
719 P.2d 104 (1986). Here, the words "for the purpose of
computing the offender score" in former subsection (5)(c)
imply that they address a situation in which the defend-
ant's sentence has not been redetermined in light of the
new law. Mr. Fletcher's sentence has been so redetermined.
Thus, former (5)(c)'s application is not relevant here.

More essentially, any ambiguity in former RCW 9.94A-
.360(5) must, under the rule of lenity, be construed in favor
of the criminal defendant. *See State v. Gore,* 101 Wn.2d
481, 485–86, 681 P.2d 227, 39 A.L.R.4th 975 (1984); *State v.
Workman,* 90 Wn.2d 443, 454, 584 P.2d 382 (1978). The
impact of the Board's redetermination of Mr. Fletcher's
minimum sentences, then, must override any conflicting
implications left over from his consecutive maximums. The
offender score applied to any possible future offenses con-
sequently arises from the redetermined minimums. There-
fore, the impact of the remaining maximum sentences is of
no substance.

A case is moot if a court can no longer grant effective relief. *In re LaBelle,* 107 Wn.2d 196, 200, 728 P.2d 138 (1986). This court can grant no relief; the Indeterminate Sentence Review Board has already granted all the relief possible. As discussed above, any remaining implications of the Board's decision have no real impact on Mr. Fletcher. Therefore, this case is moot.

Nonetheless, if a case presents issues of continuing and substantial public interest, then we may choose to hear it in spite of its mootness. *LaBelle,* 107 Wn.2d at 200; *Dunner v. McLaughlin,* 100 Wn.2d 832, 838, 676 P.2d 444 (1984). This is not such a case. The sentencing reform act effectively supplants the merger analysis at issue here. *See* RCW 9.94A.400 ("same criminal conduct" inquiry and effect of concurrent sentencing); *cf. State v. Collicott,* 112 Wn.2d 399, 771 P.2d 1137 (1989). The questions concerning double jeopardy do not expand or alter the doctrine previously developed by this court in *State v. Vladovic,* 99 Wn.2d 413, 662 P.2d 853 (1983). Therefore, the case presents no compelling reasons why we should spend our time—and the state's resources—considering its moot issues.

Despite the mootness of this case, the majority considers its issues—and does so incorrectly. In particular, the majority distorts the application of *Vladovic*'s merger analysis.

In *Vladovic,* this court developed our present test for merger: two offenses will merge if proof of one requires proof of the other and if the second offense did not have independent purposes and effects. *Vladovic,* 99 Wn.2d at 419–21. The *Vladovic* majority, in dicta, specifically found that robbery could merge into kidnapping. *Vladovic,* at 421. Yet, today's majority disregards this earlier analysis through a misreading of the kidnapping statute.

The kidnapping statute at issue here states as follows:

(1) A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent:
(a) To hold him for ransom or reward, or as a shield or hostage; or

(b) To facilitate commission of any felony or flight thereafter; or

(c) To inflict bodily injury on him; or

(d) To inflict extreme mental distress on him or a third person; or

(e) To interfere with the performance of any governmental function.

RCW 9A.40.020(1).

The majority reads this language to mean that only proof of the intent to commit the enumerated acts is required to prove first degree kidnapping. This is probably true for every subsection except the one applicable here: subsection (b). The statute does not state "with intent to commit any felony," it states, quite plainly, "with intent . . . [t]o *facilitate* commission of any felony or flight thereafter . . ." (Italics mine.) RCW 9A.40.020(1)(b). A plain reading of these words indicates that the "intent" at the end of the first paragraph applies to the word "facilitate," not to "commission." This court generally assumes that the words the Legislature chooses are not superfluous. *See, e.g., Cox v. Helenius,* 103 Wn.2d 383, 387, 693 P.2d 683 (1985); *International Paper Co. v. Department of Rev.,* 92 Wn.2d 277, 281, 595 P.2d 1310 (1979). The language in subsection (b), then, implies that a completed felony must be proven in order to show that the kidnapping was intended to facilitate it. Otherwise, there would be no felony to intend to facilitate or flee from, and therefore no first degree kidnapping.

In the present case, the *Vladovic* rule, properly applied, causes the robbery committed by Mr. Fletcher to merge into his kidnapping conviction. Because he kidnapped the women in order to steal their car, one cannot construe a purpose or effect independent from the common conduct of the two offenses. Proof of the robbery is required to show that the kidnapping facilitated the commission of a felony.

Under the *Vladovic* rule, then, the two offenses merge. As I developed in my dissent in that case, however, an additional reason compels us to recognize merger in this

case. That is the doctrine of kidnapping merger. Under this doctrine, the forced movement or abduction of a person incidental to another offense cannot support a conviction for kidnapping. *See Vladovic,* at 428 (Utter, J., concurring in part, dissenting in part). The kidnapping merger rule is followed in the majority of jurisdictions in this country. *See Vladovic,* at 428 (Utter, J., concurring in part, dissenting in part); *see also Government of V.I. v. Berry,* 604 F.2d 221, 225 (3d Cir. 1979). My position on advocating the kidnapping merger rule remains unchanged. Without the rule, "[t]he armed robber who orders his victim to momentarily remain motionless while his wallet is removed becomes guilty of, *in addition* to first degree robbery, the same offense as the infamous kidnapper of the son of Charles Lindbergh 50 years ago." *Vladovic,* at 429 (Utter, J., concurring in part, dissenting in part).

This case is moot and the majority misapplies precedent in spite of it. For these reasons, I dissent.

PEARSON, J., concurs with UTTER, J.