997 P.2d 941 (2000)
100 Wash.App. 189
STATE of Washington, Respondent,
v.
Brian Robert BEALS, Appellant.
No. 44256-2-I.
Court of Appeals of Washington, Division 1.
March 6, 2000.
Publication Ordered March 30, 2000.
*943 Jason B. Saunders, Washington Appellate Project, Seattle, WA, for appellant.
James H. Krider, Snohomish County Prosecutor, David F. Thiele, Snohomish Co., Pros. Atty. Office, Everett, WA, for respondent.
*942 ELLINGTON, J.
Brian Beals hit Richard Perry in the head with a hammer and demanded $500. He was convicted of second degree assault and attempted first degree robbery and sentenced to life in prison without parole pursuant to the Persistent Offender Accountability Act (POAA). We hold that Beals' convictions for the two offenses do not merge. Because the trial court failed to classify a 1974 out-of-state conviction as required by the Sentencing Reform Act, we remand for resentencing. Finally, we reject Beals' claim that a life sentence under the POAA violates procedural due process.

Facts
Richard Perry lived in an apartment with his ex-wife and her boyfriend, Steven Cotter. On May 31, 1998, Brian Beals came to visit Cotter. Perry was sick with the flu and had been in bed most of the day. Perry's ex-wife had gone to her mother's.
Perry testified that as he started to drift to sleep, he felt something hit him in the head. He awoke to find Beals hitting him with a hammer, and Cotter standing in the bedroom doorway with a knife. Beals hit Perry on the head, left ear, shoulder, and wrist.
Beals also demanded $500 and threatened to kill Perry if he did not comply. Perry looked for his wallet in an effort to *944 stall for time, hoping that a neighbor would call the police. At some point, Perry managed to take the knife away from Cotter, who then left the apartment. A neighbor called the police after she heard Perry saying, "Stop hitting me" and "I am looking for it."
Perry's injuries included lacerations to the forehead, a puncture wound to the cheek, and bruises on his shoulder, wrist, and scalp. Perry testified that he found his wallet a few days later, and it did not appear that Beals or Cotter had taken any money from it.
Beals, in contrast, testified that Cotter was angry with Perry's ex-wife, and came rushing toward Beals. To defend himself, Beals reached for a nearby hammer and started swinging it back and forth. At that point, Perry emerged from his bedroom and walked right into the hammer, which hit him in the head.
Beals was charged with attempted first degree robbery, contrary to RCW 9A.28.020[1] and RCW 9A.56.200(1)(b)-(c),[2] and second degree assault, in violation of RCW 9A.36.021(1)(c),[3] both while armed with a deadly weapon (the hammer). A jury found Beals guilty on both counts. Based on prior convictions for a 1974 North Carolina assault and a 1988 Washington second degree assault, Beals was sentenced to life in prison without parole pursuant to the Persistent Offender Accountability Act (POAA).
On appeal, Beals argues: (1) his second degree assault conviction should have merged into the attempted first degree robbery conviction; (2) his out-of-state conviction was not properly classified at sentencing as required by the Sentencing Reform Act (SRA); and (3) his sentence of life without parole violates his procedural due process rights and the SRA requirement that a determinate sentence be imposed "with exactitude."

Discussion
A. Merger
Merger is "a doctrine of statutory interpretation used to determine whether the Legislature intended to impose multiple punishments for a single act which violates several statutory provisions." State v. Vladovic, 99 Wash.2d 413, 419 n. 2, 662 P.2d 853 (1983). The doctrine only applies "where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping)." Vladovic, 99 Wash.2d at 421, 662 P.2d 853. In other words, crimes merge when proof of one crime is necessary to prove an element or the degree of another crime. Vladovic, 99 Wash.2d at 419-21, 662 P.2d 853. If one of the crimes involves an injury that is separate and distinct from that of the other crime, the crimes do not merge. Vladovic, 99 Wash.2d at 421, 662 P.2d 853.
Beals argues his second degree assault conviction should merge into the attempted first degree robbery conviction on the basis that he assaulted Perry in order to effectuate the robbery.[4] We disagree. A *945 completed second degree assault is not necessary to prove attempt to commit first degree robbery, and it is unlikely the legislature intended to the merger doctrine to so apply here. The attempted robbery was complete as soon as Beals formed the requisite intent and took the hammer in hand, and is distinguishable from Beals' act of hitting Perry on the head to complete the assault. If two crimes have "independent purposes or effects," they do not merge. State v. Frohs, 83 Wash.App. 803, 815-17, 924 P.2d 384 (1996) (rejecting defendant's claim that victim suffered no separate injury because he used same physical force to both restrain and assault her). Accordingly, Beals could be punished separately for both crimes.
Furthermore, we reject Beals' argument that the convictions should merge because he actually inflicted bodily injury (one of the elements of first degree robbery) on Perry. The attempt to commit first degree robbery required only a single substantial step, and could have been satisfied by proof of something far less than second degree assault (e.g., merely "displaying" what appears to be a deadly weapon). In re Fletcher, 113 Wash.2d 42, 776 P.2d 114 (1989), not cited by the parties, is instructive here. In Fletcher, the defendant forcibly entered a car occupied by two women, forced them to drive him to a deserted road, and shot them after they exited the vehicle. The defendant pleaded guilty to first degree kidnapping, first degree robbery, and first degree assault. The defendant argued that the robbery should merge into the kidnapping, because the kidnapping statute specifically requires proof of another felony to elevate the crime to first degree kidnapping. The Supreme Court rejected the argument, noting that the kidnapping statute only requires proof of intent to commit various acts, not that the acts actually be committed. Fletcher, 113 Wash.2d at 52-53, 776 P.2d 114. Similarly here, all that was required to satisfy the elements of attempted first degree robbery was a substantial step, which may or may not have included actual injury to the victim. The merger doctrine is thus inapplicable.
B. Classification of Out-of-State Conviction
Beals contends for the first time on appeal that the sentencing court erred by not classifying his North Carolina assault conviction. A challenge to the classification of an out-of-state conviction may be raised for the first time on appeal. State v. Ford, 137 Wash.2d 472, 484-85, 973 P.2d 452 (1999).
Before use of an out-of-state conviction for sentencing, the SRA requires the State to prove by a preponderance of the evidence both the existence of the prior conviction and its classification. Ford, 137 Wash.2d at 479-80, 973 P.2d 452 (citations omitted). The best evidence of a prior conviction is a certified copy of the judgment, although the State may also introduce comparable transcripts or documents of record to establish criminal history. Ford, 137 Wash.2d at 480, 973 P.2d 452. The sentencing court must then properly classify the conviction by comparing the elements of the out-of-state offense with the elements of potentially comparable Washington crimes. Ford, 137 Wash.2d at 479, 973 P.2d 452 (citations omitted). If the elements are not identical, or if the offense is defined more narrowly in Washington, a court may need to inquire into the record of the out-of-state conviction to determine whether the defendant's conduct would have violated a comparable Washington offense. Ford, 137 Wash.2d at 479, 973 P.2d 452. The State, not the defendant, "bears the ultimate burden of ensuring the record supports the existence and classification of out-of-state convictions." Ford, 137 Wash.2d at 480, 973 P.2d 452.
In Ford, the State asserted that the defendant's out-of-state convictions would be classified as felonies under comparable Washington law, but failed to offer into evidence any documents of record, California statutes, or comparable Washington statutes. In addition, the trial court did not engage in any statutory comparison. Holding both the record and the procedure inadequate under principles of due process and the SRA, *946 the court remanded for resentencing. Ford, 137 Wash.2d at 481-82, 973 P.2d 452.
Here, the State presented evidence of a 1974 North Carolina assault conviction against Beals in the form of certified copies of a grand jury indictment, guilty plea, and judgment and sentence. The State did not, however, offer into evidence copies of the North Carolina statute then in effect. Nor did the trial court engage in any comparison of the statutory elements of the North Carolina offense with the potentially comparable Washington offense.[5]
A challenge to the classification of an out-of-state conviction is reviewed de novo. State v. McCorkle, 88 Wash.App. 485, 493, 945 P.2d 736 (1997), aff'd, 137 Wash.2d 490, 973 P.2d 461 (1999). While this court could locate the North Carolina statute then in effect and compare the elements of Beals' conviction with a potentially comparable Washington offense, we decline to do so. The proper forum for classification of out-of-state convictions is at the sentencing hearing, where the State can present necessary documentary evidence, the defendant can refute the State's evidence and arguments, and the court can then engage in the required comparison on the record to determine if the State met its burden of proof. "[C]lassification is a mandatory step in the sentencing process under the SRA," and the sentencing court should be required to complete its task. Ford, 137 Wash.2d at 483, 973 P.2d 452.[6] We therefore remand the case to the sentencing court to complete the classification process as required by the SRA.
On remand, the State is permitted to offer additional evidence with respect to the North Carolina conviction because Beals did not challenge the classification at sentencing.[7] Where disputed issues have been fully argued to the sentencing court, a reviewing court normally will remand for resentencing without allowing the introduction of further evidence. But where the defendant specifically fails to put the court on notice as to any apparent defects, a reviewing court may on remand allow the State to prove the classification of the disputed convictions. Ford, 137 Wash.2d at 485, 973 P.2d 452 (citation omitted). As Ford explained:
This preserves the purpose of the SRA to impose fair sentences based on provable facts, yet provides the proper disincentive to criminal defendants who might otherwise purposefully fail to raise potential defects at sentencing in the hopes the appellate court will reverse without providing the State further opportunity to make its case.
Ford, 137 Wash.2d at 486, 973 P.2d 452. Accordingly, we reverse and remand for resentencing and an evidentiary hearing to allow the State to introduce evidence to support the proper classification of Beals' North Carolina conviction.
*947 C. Persistent Offender Accountability Act
Beals argues that the Persistent Offender Accountability Act (POAA) fails to protect his procedural due process rights because the burden of proof at sentencing should be beyond a reasonable doubt, and that he was entitled to a jury trial at sentencing. Beals acknowledges that these arguments have been rejected by the Washington Supreme Court, but he raises the issues "to preserve them for further review in the federal system." See State v. Manussier, 129 Wash.2d 652, 921 P.2d 473 (1996), cert. denied, 520 U.S. 1201, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997); State v. Rivers, 129 Wash.2d 697, 921 P.2d 495 (1996); State v. Thorne, 129 Wash.2d 736, 921 P.2d 514 (1996). Based on these decisions, we reject Beals' constitutional arguments without further discussion.
Beals also argues that his life sentence without the possibility of parole violates the SRA requirement that a determinate sentence be imposed "with exactitude." The POAA is part of the SRA and expressly states that persistent offenders will be sentenced to life without parole. RCW 9.94A.120(4). Thus, the lack of a determinative sentence is not contrary to the SRA. State v. Ames, 89 Wash.App. 702, 711, 950 P.2d 514, review denied, 136 Wash.2d 1009, 966 P.2d 903 (1998).
We affirm the judgment, but reverse and remand the case for resentencing and an evidentiary hearing to classify the out-of-state conviction.
AGID, A.C.J., and WEBSTER, J., concur.
NOTES
[1] RCW 9A.28.020(1) provides: "A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime."
[2] RCW 9A.56.200(1)(b)-(c) provides: "A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he ... [d]isplays what appears to be a... deadly weapon; or [i]nflicts bodily injury."
[3] RCW 9A.36.021(1)(c) provides: "A person is guilty of assault in the second degree if he or she... assaults another with a deadly weapon[.]"
[4] Beals did not raise the merger issue below. Instead, he argued in his sentencing brief that the convictions should constitute same criminal conduct pursuant to RCW 9.94A.400(1). The record also reflects that neither Beals nor the court addressed merger or same criminal conduct at sentencing.

A claim of error may be raised for the first time on appeal if it is a "`manifest error affecting a constitutional right.'" RAP 2.5(a)(3); State v. McDonald, 138 Wash.2d 680, 691, 981 P.2d 443 (1999) (quoting State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995)). The burden is on the defendant to "`show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error `manifest,' allowing appellate review.'" McDonald, 138 Wash.2d at 691, 981 P.2d 443 (quoting McFarland, 127 Wash.2d at 333, 899 P.2d 1251).
The State failed to object to the assignment of error on appeal. We therefore address Beals' contentions without deciding whether the alleged error is manifest.
[5] The court found: "Well then, based on the record I have before me, including the briefs and the other materials that have been supplied to the Court, I find that the conviction in North Carolina is valid for the purposes of this hearing...."
[6] The Ford court explained:

Sentencing is a critical step in our criminal justice system. The fact that guilt has already been established should not result in indifference to the integrity of the sentencing process. Determinations regarding the severity of criminal sanctions are not to be rendered in a cursory fashion. Sentencing courts require reliable facts and information. To uphold procedurally defective sentencing hearings would send the wrong message to trial courts, criminal defendants, and the public:
"The meaning of appropriate due process at sentencing is not ascertainable in strictly utilitarian terms. There is an important symbolic aspect to the requirement of due process. Our concept of the dignity of individuals and our respect for the law itself suffer when inadequate attention is given to a decision critically affecting the public interest, the interests of victims, and the interests of the persons being sentenced. Even if informal, seemingly casual, sentencing determinations reach the same results that would have been reached in more formal and regular proceedings, the manner of such proceedings does not entitle them to the respect that ought to attend this exercise of a fundamental state power to impose criminal sanctions."
Ford, 137 Wash.2d at 484, 973 P.2d 452 (quoting ABA Standards for Criminal Justice: Sentencing std. 18-5.17, at 206 (3d ed.1994)).
[7] Beals challenged only the factual basis for his guilty plea on the basis that it was not voluntarily made.